# APPENDIX A

REDACTED

| RETAIL INSTALLMENT CONTRACT HOME IMPROVEMENTS ILLINOIS | Seller<br>BETTER BUILT LUMBER & SUPPLY INC.<br>17350 CICERO AVE<br>COUNTRY CLUB HILLS, IL 60478<br>(708)799-9393 | Buyer<br>BEANIE PICKETT<br>TRINA D PICKETT |
|---|---|---|
| No. _____<br>Date 4-25-2008 | "We" and "us" mean the Seller above, its successors and assigns. | "You" and "your" mean each Buyer signing below, jointly and individually. |

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE<br>The total cost of your purchase on credit, including your down payment of $ 0.00 |
|---|---|---|---|---|
| 10.000 % | $ 8,225.60 | $ 13,888.00 | $ 22,113.60 | $ 22,113.60 |

**Payment Schedule:** Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 120 | 184.28 | Monthly, 45 days from completion |

**Security:** You are giving a security interest in
☐ the Goods purchased.
☒ the following described real or personal property _____

☒ **Late Charge:** If a payment is more than 10 days late, you will be charged 5.0% of scheduled payment or $10.00, whichever is more.

**Prepayment:** If you pay off this Contract early, you ☐ may ☒ will not have to pay a Minimum Finance Charge.

**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.       "e" means an estimate

**CREDIT INSURANCE:** Credit life, credit accident and health (disability), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

**Credit Life:** Insured N/A _____
☐ Single ☐ Joint  Prem. $ 0.00  Term _____
**Credit Disability:** Insured N/A _____
☐ Single ☐ Joint  Prem. $ 0.00  Term _____

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

_____ d/o/b  _____ d/o/b
Buyer                                   Buyer

_____ d/o/b  _____ d/o/b
Buyer                                   Buyer

**PROPERTY INSURANCE:** You must insure the Property securing this Contract. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The deductible amount of this insurance may not exceed $ 0.00 _____. We do not offer liability insurance coverage for bodily injury and/or property damage.

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---:|---:|
| Goods and/or Services Price | $ | 13,888.00 |
| (including sales tax of $ 0.00 ) | | |
| Service Contract, Paid to: N/A | *$ | 0.00 |
| 1. Cash Price | $ | 13,888.00 |
| Manufacturer's Rebate $ 0.00 | | |
| Cash Down Payment $ 0.00 | | |
| Deferred Down Payment $ 0.00 | | |
| 2. Subtotal | $ | 0.00 |
| Trade-In Allowance $ 0.00 | | |
| Less: Amount Owing $ 0.00 | | |
| To: _____ | | |
| 3. Net Trade-In | $ | 0.00 |
| 4. Total Down Payment (line 2 plus line 3) | $ | 0.00 |
| 5. Unpaid Balance of Cash Price (line 1 minus line 4) | $ | 13,888.00 |
| Fees Paid to Others: | | |
| Paid to Public Officials - Filing Fees Only | $ | 0.00 |
| Paid to Public Officials - Other than Filing Fees | $ | 0.00 |
| Insurance Premiums* | $ | 0.00 |
| To: _____ | $ | 0.00 |
| To: _____ | $ | 0.00 |
| To: _____ | $ | 0.00 |
| To: _____ | $ | 0.00 |
| To: _____ | $ | 0.00 |
| To: _____ | $ | 0.00 |
| To: _____ | $ | 0.00 |
| To: _____ | $ | 0.00 |
| To: _____ | $ | 0.00 |
| 6. Subtotal (line 5 plus all Fees Paid to Others) | $ | 13,888.00 |
| 7. Prepaid Finance Charges | $ | 0.00 |
| Amount Financed (line 6 minus line 7) | $ | 13,888.00 |

*e a portion of this amount.

ILLINOIS HOME IMPROVEMENT RETAIL INSTALLMENT CONTRACT
© 1996 Bankers Systems, Inc., St. Cloud, MN Form RSSIHILAZ-IL 10/8/2002

_____  _____  (page 1 of 3)

**SALE:** You agree to purchase from us the goods and/or services described below according to the terms of this Contract. The term "Contract" means this document and any separate document which secures this Contract.

Description of Goods and/or Services Purchased
HOME IMPROVEMENT
SEE WORK PROPOSAL

Description of Other Collateral (Not household goods)
N/A

☐ **SERVICE CONTRACT:** With your purchase of the Goods, you agree to purchase a Service Contract to cover _____

This Service Contract will be in effect for N/A .

**SECURITY:** In this Contract, the term "Property" refers to any collateral which secures this Contract, whether by this or separate form, as indicated immediately below.

☐ You give us a security interest in the goods (Goods) and in any other collateral described above, plus all accessions to such Property.

☒ This Contract is secured by a separate mortgage or deed of trust, dated _____, on real estate, as shown in the TRUTH IN LENDING DISCLOSURES.

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ 13,888.00 , plus interest on the unpaid balance at the rate of 10.000 % per year until this Contract is paid in full. Interest will begin to accrue on _____
The Date of Loan Disbursement

You agree to pay this Contract according to the payment schedule and late charge provisions shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms of this Contract.

☐ **MINIMUM FINANCE CHARGE:** You agree to pay a minimum finance charge of $ 0.00 if you pay this Contract in full before we have earned that much in finance charges.

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED.
☐ You agree to make deferred payments as part of the cash down payment as reflected in your Payment Schedule.

**PREPAYMENT:** You may prepay this Contract in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until you pay in full.
A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance.

**GENERAL TERMS:** You have been given the opportunity to purchase the Goods and described services for the Cash Price or the Total Sale Price. The Total Sale Price is the total price of the Goods and any services if you buy them over time. You agreed to purchase the items over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee, that is more than the maximum amount permitted by either state or federal law for this sale. If you pay a finance charge or fee that is contrary to this provision, we will, instead, apply it first to reduce the principal balance, and when the principal has been paid in full, refund it to you.
You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.
If any section or provision of this Contract is not enforceable, this Contract will remain enforceable without such section or provision.
You agree that the law of the state of Illinois will govern this transaction, which is the state where the home to be improved is located. Federal law may also apply.

**ADDITIONAL SECURITY:** You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** If you give us a security interest or a real estate mortgage or deed of trust in Property, (as shown in the SECURITY section and TRUTH IN LENDING DISCLOSURES) you represent and agree to the following:
  A. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property valid.
  B. The security interest you are giving us in the Property comes ahead of the claim of any other general or secured creditor except as disclosed to us by you and agreed to in writing by us. You agree to sign any additional documents or provide us with any additional information we may require to keep the priority of our claim to the Property. You will not do anything to change our interest in the Property.
  C. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract.
  D. You will not attempt to sell the Property (unless it is properly identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent. You will not permit the Property to become attached to any real estate without first providing us an opportunity to preserve our priority status.
  E. You will pay all taxes and assessments on the Property as they become due.
  F. You will notify us of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**DEFAULT:** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
  A. You fail to perform any obligation that you have undertaken in this Contract.
  B. We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.
If you default, you agree to pay our costs for enforcing and collecting this Contract, including, without limitation, court costs, attorneys' fees, and fees for repossession, repair, storage and sale of the Property securing this Contract.
If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**REMEDIES:** If you are in default on this Contract, we have all of the remedies provided by law, this Contract, any separate personal property security agreement, and any separate real estate mortgage or deed of trust. (Sentences C. and D. below relate only to personal property security interests.) These include:
  A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges. This right may be exercised only after default has continued for 30 days or one of the other circumstances arises under Ill. Rev. Stat. ch. 815 para. 405/13. This right is also subject to your limited right to reinstate this Contract without acceleration under Ill. Rev. Stat. ch. 815 para. 405/26.

© 1996 Bankers Systems, Inc., St. Cloud, MN Form RSSIHILAZ-IL 10/8/2002

(page 2 of 3)

B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn interest from the date paid at the rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.
C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
D. We may take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property (subject to your limited right to redeem the Property and reinstate this Contract under Ill. Rev. Stat. ch. 815 para. 405/26) and apply what we receive as provided by law to our reasonable expenses and then toward your obligations.
E. Except when prohibited by law (such as the rules in under Ill. Rev. Stat. ch. 815 para. 405/26 for retention of the Property in satisfaction of the debt), we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not waive our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

If your obligation under this Contract is insured under the Title 1 Property Improvement Loan Regulations of the Department of Housing and Urban Development, our right to accelerate the maturity is subject to the limitations of those regulations.

**INSURANCE:** If this Contract is secured, you agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as loss payee on any such policy. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. You will keep the insurance in effect until this Contract is paid in full.

**COLLATERAL PROTECTION INSURANCE NOTICE:** Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the premiums for that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The premiums may be added to your total outstanding balance or obligation. The premiums may be more than the premiums for insurance you may be able to obtain on your own.

**OBLIGATIONS INDEPENDENT:** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:
A. You must pay this Contract even if someone else has also signed it.
B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
C. We may release any security and you will still be obligated to pay this Contract.
D. If we give up any of our rights, it will not affect your duty to pay this Contract.
E. If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WARRANTY:** Warranty information is provided to you separately.

**WAIVER:** To the extent permitted by law, you agree to give up your rights to require us to do certain things. We are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid; or have not been paid in the appropriate amount, time or manner; or, (3) give notice that we intend to make, or are making, this Contract immediately due.

**ASSIGNMENT:** This Contract is assigned to Assignee (identify): SOUTH CENTRAL BANK, N.A.

This assignment is made under the terms of a separate agreement made between the Seller and Assignee.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

### NOTICE TO THE BUYER.

1. Do not sign this agreement before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the agreement you sign. 3. Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge.

**BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1, 2 AND 3 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.**

### RETAIL INSTALLMENT CONTRACT

X _____ 4/25/2008
                          Date

X _____ 4/25/2008
                          Date

X _____
Signature                            Date

X _____
Signature                            Date

Print buyer's address below signature if other than shown on page 1.

**SELLER'S SIGNATURE**

X _____
Name and Title  Andrew George    President

**Disbursement Date:** 6-9-08 _____ (This date is for Title 1 HUD insurance purposes and may be completed after the Contract is signed to reflect the actual disbursement date, and not any estimated disbursement date. It may appear only on the original form.)

© 1996 Bankers Systems, Inc., St. Cloud, MN Form RSSIHILAZ-IL 10/8/2002

(page 3 of 3)

# APPENDIX B

# REDACTED



Doc#: 0818246045 Fee: $48.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 06/30/2008 02:27 PM Pg: 1 of 7

This document was prepared by:
Laura Ng

When recorded, please return to:
SOUTH CENTRAL BANK, N.A.
525 WEST ROOSEVELT ROAD
CHICAGO, IL 60607

CTIC-HE

State of Illinois ———————————————— Space Above This Line For Recording Data ————

## MORTGAGE
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is ......4-25-08...... and the parties, their addresses and tax identification numbers, if required, are as follows:

   MORTGAGOR:
   BEANIE PICKETT AND TRINA D. PICKETT

   TAX ID# 31-26-207-008-0000

   LENDER:

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, sells, conveys, mortgages and warrants to Lender the following described property:
   SEE ATTACHED EXHIBIT "A"

   The property is located in .COOK............................................ at ....................................................
                                              (County)
   ..........................................................................................................................................
   (Address)                                        (City)                                       (ZIP Code)

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*

ILLINOIS - MORTGAGE (NOT FOR FNMA, FHLMC, FHA OR VA USE)
Expere℠ ©1994 Bankers Systems, Inc., St. Cloud, MN  Form RE-MTG-IL 12/14/2001



**REDACTED**

B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

4. **PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

5. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:
    A. To make all payments when due and to perform or comply with all covenants.

    B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

    C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

6. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

7. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

8. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

Experel ©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-IL 12/14/2001

# REDACTED

9. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

10. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys, mortgages and warrants to Lender as additional security all the right, title and interest in the following (all referred to as Property): existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications or replacements (all referred to as Leases); and rents, issues and profits (all referred to as Rents). In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default.

    Upon default, Mortgagor will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment. As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.

11. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

12. **DEFAULT.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

13. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default. Upon default, Lender shall have the right, without declaring the whole indebtedness due and payable, to foreclose against all or part of the Property. This Mortgage shall continue as a lien on any part of the Property not sold on foreclosure.

    At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

Exper[TM] ©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-IL 12/14/2001

**REDACTED**

14. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released.

15. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

   Mortgagor represents, warrants and agrees that:
   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

   B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

   C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

   D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

16. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

17. **INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding sentence can change during the term of the loan. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

Experel ©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-IL 12/14/2004



# REDACTED

All insurance policies, and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

18. **ESCROW FOR TAXES AND INSURANCE.** If otherwise provided in a separate agreement, Mortgagor may be required to pay to Lender funds for taxes and insurance in escrow.

19. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

20. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

21. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

22. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

23. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.



Expere™ ©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-IL 12/14/2001

# REDACTED

24. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 13,888.00 . This limitation of amount does not include interest, attorneys fees, and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

25. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

    ☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

    ☒ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

    ☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

    ☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
    ☐ Condominium Rider  ☐ Planned Unit Development Rider  ☐ Other ........................................

    ☐ **Additional Terms.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

SOUTH CENTRAL BANK, N.A.

...................................................... 4/25/08      ...................................................... 4/25/08
(Signature) BEANIE PICKETT    (Date)      (Signature) TRINA D. PICKETT    (Date)

**ACKNOWLEDGMENT:**
(Individual) STATE OF ...Illinois..., COUNTY OF ...Cook... } ss.
This instrument was acknowledged before me this 25th day of May, 2008
by Beanie Pickett & Trina D. Pickett
My commission expires:
(Seal)

"OFFICIAL SEAL"
SUSAN C. CLAUSEN
Notary Public, State of Illinois
My Commission Expires 02/01/2009

Susan C. Clausen
(Notary Public)

Exper̃e℠ ©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-IL 12/14/2003

(page 6 of 6)

# REDACTED

Exhibit A

Lot 8 in block 37 in the village of Park Forest first addition to Westwood, being a subdivision of part of the south east ¼ of section 26, lying south of the Commonwealth Edison Company right of way also part of section 25, lying south of the Elgin, Joliet and Eastern Railroad right of way all in township 35 north, range 13 east of the third principal meridian, according to the plat thereof recorded of said subdivision recorded July 1, 1955 as document 16288372, in Cook County, Illinois.

# APPENDIX C

REDACTED



SINGER LAW GROUP, LLP

July 16, 2018

FOR INFORMATION PURPOSES ONLY

Beanie Pickett
Trina D Pickett

Re: Beanie Pickett and Trina D Pickett, Borrowers
Account Number:
Property Address:

Dear Mr. and Mrs. Pickett:

Please be advised that this office represents the interests of the holder of your home mortgage secured against the above-referenced property.

Our client's records indicate that in the past you received a discharge in a bankruptcy case. Section 524 of the Bankruptcy Code tells us the discharge of a debt means you have no personal obligation to repay it. The discharge also protects you from any efforts by anyone (including our client) to collect a discharged debt as personal liability. On the other hand, the security agreement allows foreclosure against real property if the requirements under the loan documents are not met. This quick summary is not intended as legal advice. You should consult with your own advisors if you have legal questions about your rights.

Although your legal obligation to repay the loan was discharged, if you wish to retain the property, there may be options available to you. As such, we are providing certain loan information to you as a courtesy and to let you know that assistance may be available to you. If, however, you do not wish for us to send future informational letters, please contact your designated single point of contact, Jennifer Zartman at (866) 290-8795 ext. 212 or via email at jzartman@parktreeinvestments.com.

Again, this is not an attempt to collect a debt that has been discharged. This is not a demand for payment, but merely being sent for informational purposes. This is not a statement of the amount necessary to pay off or reinstate the loan. If you would like to receive more information about options for this loan, please contact your designated single point of contact at (866) 290-8795 ext. 212 or via email at jzartman@parktreeinvestments.com.

If we do not hear from you by August 17, 2018 we will assume that you've identified alternative living arrangements and do not wish to explore options to avoid foreclosure.

Regards,

Singer Law Group, LLP

1

REDACTED



## NOTICE PURSUANT TO

## THE FAIR DEBT COLLECTION PRACTICES ACT

*UNLESS YOU NOTIFY US WITHIN THIRTY (30) DAYS AFTER RECEIPT OF THIS LETTER THAT THE VALIDITY OF THIS DEBT OR ANY PORTION OF IT IS DISPUTED WE WILL ASSUME THAT THE DEBT IS VALID. IF YOU DO NOTIFY US OF A DISPUTE, WE WILL OBTAIN VERIFICATION OF THE DEBT AND MAIL IT TO YOU. ALSO UPON YOUR WRITTEN REQUEST WITHIN THIRTY (30) DAYS WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT CREDITOR. THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt, and however we have a security interest in the property and will only exercise our rights as against the property.

*Additionally, your decision to discuss mortgage assistance options with this firm is strictly voluntary. You are not obligated to pursue any mortgage assistance options discussed with us. At your request, we will immediately terminate any such discussions should you no longer wish to pursue these options.

With respect to those loans secured by property located in the state of California, the state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

**Important Notice to Servicemembers and Their Dependents**
If you or any occupant of your home are or recently were on active duty or active service, you may be eligible for benefits and protections under the Federal Servicemembers Civil Relief Act (SCRA). This includes protection from foreclosure or eviction. You may also be eligible for benefits and protections under state law or investor policy. SCRA and state Military Benefits and protections also may be available if you are the dependent of an eligible Servicemember. For more information, please call us at 888-522-6214.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age; because of all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

NOTICE: The Singer Law Group is licensed to practice law only in California and Nevada. In the event litigation is required, this matter will be referred to an attorney licensed to practice law in your state or jurisdiction.

# **APPENDIX D**

**REDACTED**



FCI Lender Services, Inc.

*Loan Servicing • Specialty Servicing • Default*

(800) 931-2424   (714) 282-2424   Fax: (714) 282-5775

BEANIE PICKETT                                                         10/30/2018

### NOTICE OF INTENT

**Dear BEANIE PICKETT**
Borrower is hereby advised that the installment of interest and/or principal that was due and payable on **12/04/2011** by Borrower under the Loan Documents has not been received by Lender, nor have the subsequent monthly installments due and payable under the Loan Documents been received by the Lender. Borrower's failure to make such required payments constitutes an event of default under the Loan Documents (the "Event of Default")

Please be further advised that, as a result of such Event of Default, Lender intends pursuant to the Loan Documents to accelerate the maturity of the indebtedness evidenced by the Loan Documents (the "indebtedness") and hereby declared that, in the event that the Event of Default is not cured on or before **11/30/2018**, the Indebtedness will be accelerated and will become immediately due and payable, together with all unpaid interest accrued thereon and all other amounts due under the Loan Documents. In addition, in the event the Event of Default is not cured on or before **11/30/2018**, Lender intends to invoke the power of sale and the Property may be sold pursuant to the terms of your security instrument and/or state and federal law.

In order to cure the Event of Default, Borrower must pay to Lender on or before **11/30/2018**, all amounts due under the Loan Documents (other than principal that has not yet become due), including but not limited to late fees, interest, attorney's fees and costs, and any amounts advanced by Lender under the Loan Documents. In addition, all property taxes and insurance premiums related to the Property must be current at the time the Event of Default is cured.

To obtain the current amount to be paid to Lender to cure the Event of Default, please contact FCI Lender Services, Inc. during our business hours, 8:00 A.M. to 5:00 P.M. Pacific Time, Monday through Friday, at 800-931-2424.

In the event the Loan is accelerated as set forth above, Borrower may have the right to reinstate the Loan after such acceleration. In addition, Borrower may have the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and/or sale of the Property.

Please be further advised that as the result of the Event of Default specified herein, Lender intends to collect all Late Charges provided for under the Note, and will accrue interest on the entire amount due and owing under the Note.

2 Pages Total
FCI-BORROWER 30 Day Delinquency Letter-20180406

**FCI Lender Services, Inc.**

*Loan Servicing • Specialty Servicing • Default*

Please note that Borrower is obligated under the Loan Documents to pay to Lender all reasonable costs of collection incurred by Lender in connection with its exercise of remedies under Loan Documents, including specifically, without limitation, all reasonable attorneys' fees and expenses and court costs.

Lender's notice to Borrower of the Event of Default specified in this letter shall not in any way be deemed to be a waiver or limitation of any other default that may not or hereafter exist under any of the Loan Documents, and Lender specifically reserves the right to declare other and future defaults that may exist from time to time under the Loan Documents.

Please contact the undersigned if you have any questions about the matters discusses herein.

The toll-free number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency is 1-800-569-4287 or TTY/TDD 1-800-877-8339. You may find other useful consumer information on foreclosure alternatives on the HUD website at HTTP://www.hud.gov/foreclosure/ including an article on "Tips for Avoiding Foreclosure".

***Note: FCI Lender Services, Inc. is a debt collector and is attempting to collect a debt.***

**IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU HAVE RECEIVED A BANKRUPTCY DISCHARGE, THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT.**

Sincerely,

FCI Lender Services, Inc.
Specialty Loan Servicing Dept.
(800) 931-2424 Ext 650
Fax: 714-282-5775

# APPENDIX E

REDACTED



**FCI Lender Services, Inc.**

Loan Servicing • Specialty Servicing • Default

(800) 931-2424  (714) 282-2424  Fax: (714) 282-5775

10/30/2018

TRINA D PICKETT

## NOTICE OF INTENT

**Dear TRINA D PICKETT**

Borrower is hereby advised that the installment of interest and/or principal that was due and payable on **12/04/2011** by Borrower under the Loan Documents has not been received by Lender, nor have the subsequent monthly installments due and payable under the Loan Documents been received by the Lender. Borrower's failure to make such required payments constitutes an event of default under the Loan Documents (the "Event of Default")

Please be further advised that, as a result of such Event of Default, Lender intends pursuant to the Loan Documents to accelerate the maturity of the indebtedness evidenced by the Loan Documents (the "indebtedness") and hereby declared that, in the event that the Event of Default is not cured on or before **11/30/2018**, the Indebtedness will be accelerated and will become immediately due and payable, together with all unpaid interest accrued thereon and all other amounts due under the Loan Documents. In addition, in the event the Event of Default is not cured on or before **11/30/2018**, Lender intends to invoke the power of sale and the Property may be sold pursuant to the terms of your security instrument and/or state and federal law.

In order to cure the Event of Default, Borrower must pay to Lender on or before **11/30/2018**, all amounts due under the Loan Documents (other than principal that has not yet become due), including but not limited to late fees, interest, attorney's fees and costs, and any amounts advanced by Lender under the Loan Documents. In addition, all property taxes and insurance premiums related to the Property must be current at the time the Event of Default is cured.

To obtain the current amount to be paid to Lender to cure the Event of Default, please contact FCI Lender Services, Inc. during our business hours, 8:00 A.M. to 5:00 P.M. Pacific Time, Monday through Friday, at 800-931-2424.

In the event the Loan is accelerated as set forth above, Borrower may have the right to reinstate the Loan after such acceleration. In addition, Borrower may have the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and/or sale of the Property.

Please be further advised that as the result of the Event of Default specified herein, Lender intends to collect all Late Charges provided for under the Note, and will accrue interest on the entire amount due and owing under the Note.

Please note that Borrower is obligated under the Loan Documents to pay to Lender all reasonable

2 Pages Total
FCI-BORROWER 30 Day Delinquency Letter-20180400